IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**WESTFIELD INSURANCE COMPANY,**

        Plaintiff,

**v.**

        **CIVIL ACTION NO. 5:18-CV-100**
        Judge Bailey

**SISTERSVILLE TANK WORKS, INC.,
ROBERT N. EDWARDS, DEBORAH S.
EDWARDS, E. JANE PRICE,** individually
and as Executrix of the Estate of Robert
G. Price, deceased, **GARY THOMAS SANDY,
PEGGY P. SANDY, DOUGLAS L. STEELE,**
and **CAROL STEELE,**

        Defendants,

**and**

**SISTERSVILLE TANK WORKS, INC.,**

        Defendant,
        Counterclaim Plaintiff,
        and Third-Party Plaintiff,

**v.**

**REAGLE & PADDEN, INC.,** and
**DAVID C. PADDEN,**

        Third-Party Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

Presently before this Court is defendant Sisterville Tank Works, Inc.'s ("STW") Motion

for Summary Judgment on Behalf of Defendant/Third-Party Plaintiff Sistersville Tank Works,

Inc. [Doc. 298] and Motion for Leave to Exceed Page Limit Behalf of Defendant/Third-Party

Plaintiff Sistersville Tank Works, Inc. [Doc. 299], both filed on August 30, 2019.  As a preliminary matter, this Court finds good cause and hereby **GRANTS** STW's Motion for Leave to Exceed Page Limit **[Doc. 299]**, and **ORDERS** STW's Memorandum in Support of Motion for Summary Judgment [Doc. 299-1] filed.

Similarly, plaintiff Westfield Insurance Company ("Westfield") filed a Motion for Summary Judgment [Doc. 302], an accompanying Motion for Leave to File Excess Pages [Doc. 303], and a Memorandum in Support of Summary Judgment [Doc. 310].  Finding good cause, this Court hereby **GRANTS** Westfield's Motion for Leave to File Excess Pages **[Doc. 303]**, and **ORDERS** Westfield's Memorandum in Support [Doc. 310] filed.

Third-party defendants Reagle & Padden, Inc. and David C. Padden ("Padden") filed a Motion for Summary Judgment [Doc. 300] and accompanying Memorandum in Support [Doc. 301].

Subsequently, defendant STW filed a Response in Opposition [Doc. 311] to defendant Padden's Motion for Summary Judgment, and a Response in Opposition [Doc. 312] to plaintiff Westfield's Motion for Summary Judgment.  Similarly, plaintiff Westfield then filed a Response in Opposition [Doc. 313] to defendant STV's Motion for Summary Judgment.  Each party then filed associated Replies. *See* [Docs. 314, 315, & 316].  Having been fully briefed, this matter is now ripe for adjudication.

## PROCEDURAL BACKGROUND

Plaintiff Westfield initiated this action for declaratory judgment against defendant STW. *See* [Doc. 1].  Specifically, plaintiff Westfield asks this Court to declare that it is not required

to defend and indemnify defendant STW in several actions currently pending in state court in which defendant STW is accused of negligence resulting in cancer diagnoses in the state court plaintiffs. [Id.]. Plaintiff Westfield asserts the same argument in its Motion for Summary Judgment [Doc. 302.].

Conversely, in its Motion for Summary Judgment [Doc. 298] and accompanying Memorandum in Support of Motion for Summary Judgment [Doc. 299-1], defendant STW moves this Court to declare that plaintiff Westfield owes it a continuing duty to defend under the terms and conditions of various insurance policies issued to it by Westfield. [Id.].

Defendant STW also has several pending claims against defendant Padden related to the alleged "mis-handling" of defendant STW's underlying claims and insurance agreements. *See* [Doc. 11]. Defendant Padden argues in its Motion for Summary Judgment [Doc. 300] and accompanying Memorandum in Support [Doc. 301] that each of defendant STW's claims against it fail as a matter of law.

## **RELEVANT FACTS**

Defendant STW is a West Virginia corporation located in Sistersville, West Virginia. [Doc. 299-1 at 2]. The corporation manufactures, repairs, and installs industrial storage tanks for the chemical, petroleum, energy, and pharmaceutical industries. [Id.]. At the time plaintiff Westfield commenced this action, defendant STW had been named as a defendant in three cases currently pending before the Circuit Court of Marshall County, West Virginia.[1] [Id.].

---

[1] The three pending circuit court cases are styled as follows: ***Edwards v. Covestro***, Marshall County Civ. Act. No. 16-C-32; ***Price v. Sistersville Tank Works, Inc.***, Marshall County Civ. Act. No. 17-C-62H; and ***Steele v. Sistersville Tank Works, Inc.***, Marshall County Civ. Act. No. 17-C-231H.

Each of the state claimants was diagnosed with cancer in 2014, 2015, and 2016, respectively. [Id. at 3]. In each state action, the respective plaintiffs claim their cancers were caused by exposure to harmful chemicals as a result of defendant STW's negligent manufacture, installation, repair and/or maintenance of storage tanks at the industrial sites where they were employed from the 1960s to the early 2000s. *See* [Doc. 299-1].

Defendant STW has utilized defendant Padden as its insurance agent since 1985. [Doc. 311 at 3]. Notably, defendant Padden acted as the insurance agent who brokered the policies at issue with the parties in the pending suit. *See* [Doc. 11]. Specifically, defendant STW purchased two insurance policies from plaintiff Westfield, through defendant Padden, over the course of twenty-two (22) years, from April 15, 1989, through April 15, 2010. *See* [Doc. 1]. Policy No. 3471223 was a commercial general liability policy with a policy period extending from April 15, 1989, to April 15, 2010 (the "1989–2010 CGL Policy"). The 1989–2010 CGL Policy specifically excluded coverages for claims arising from "products" and "completed operations." [Id. at ¶¶ 51–66]. Policy No. 3471224 was a "claims made" policy issued by plaintiff Westfield from April 15, 1989, to April 15, 2001, which provided defendant STW with "products/completed operations" coverage. [Id. at ¶¶ 48--49]. As the underlying state court claims were brought after this policy period ended, the parties agree that Policy No. 3471224 does not provide defendant STW coverage against those claims. *See* [Doc. 299-1].

As discovery progressed, it revealed that defendant Padden also procured insurance on defendant STW's behalf from plaintiff Westfield under a series of CGL and umbrella policies from January 1, 1985, to April 15, 1989. *See* [Doc. 120]. As the arguments asserted

4

in the parties' respective Motions hinge on whether underlying coverage for the aforementioned state claims exists, this Court begins with a recitation of the following relevant facts and applicable law.

## STANDARD OF REVIEW AND JURISDICTION

### I. Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment

"must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other; rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. **Wright, Miller, & Kane**, *Federal Practice and Procedure*: Civil 2d § 2720; *see also* **Rossignol v. Voorhaar,** 316 F.3d 516, 523 (4th Cir. 2003). Summary judgment is especially appropriate in this case because the construction of insurance contracts is a legal question well suited for resolution by the court. *St. Paul Fire & Marine Ins. Co. v. Jacobson,* 826 F.Supp. 155, 157 (E.D. Va. 1993) (Ellis, J.), *aff'd* 48 F.3d 778 (4th Cir. 1995).

## II. The Federal Declaratory Judgment Act

Federal courts with diversity jurisdiction must apply state substantive law but federal procedural law. *Liberty Corp. Capital Ltd. v. Peacemaker Nat'l Training Ctr., LLC*, 348 F.Supp.3d 585, 590 (N.D. W.Va. 2018) (Groh, C.J.). The Declaratory Judgment Act, 28 U.S.C. § 2201, is a procedural statute which grants district courts the discretionary power to entertain declaratory judgment actions. *State Farm Fire & Cas. Co. V. Kirby*, 919 F.Supp. 939 (N.D. W.Va. 1996) (Keeley, J.).

To obtain declaratory relief:

[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. The relief is available only for a concrete case admitting of an immediate and definite determination of the legal rights of the parties.

*Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 242–43 (1952). Moreover, a declaration of parties' rights under an insurance contract is an appropriate use of the declaratory judgment mechanism. *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998). "The declaratory judgment action is designed to allay exactly the sort of uncertainty that flows from the threat that ambiguous contractual rights may be asserted." *Id.*

### III. Choice of Law

The provisions of an insurance policy "will ordinarily be construed according to the laws of the state where the policy was issued and the risk insured was principally located, unless another state has a more significant relationship to the transaction and the parties." Syl. Pt. 2, *in part*, *Lee v. Saliga*, 179 W.Va. 762, 373 S.E.2d 345 (1988). Here, there is no dispute amongst the parties that both defendant STW and defendant Padden are located and incorporated under the laws of West Virginia.

Further, each of the underlying state court actions involve West Virginia workers, allegedly injured on job sites in West Virginia, from alleged exposures to hazardous substances in West Virginia. *See* [Doc. 176-1]. As such, this Court finds that West Virginia has the most significant relationship to the transaction and the parties, and West Virgina law applies to the interpretation of the policies.

### A. Applicable West Virginia Law

In applying West Virginia law to the interpretation of the aforementioned policies, this Court notes that unambiguous insurance policy provisions are to be applied according to their plain meaning. *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970). The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a question of law. Syl. Pt. 2, *Riffe v. Home Finders Assocs.*, 205 W.Va. 216, 517 S.E.2d 313 (1999).

When a policy's provisions are ambiguous, they are to be construed liberally in the insured's favor. *Erie Ins. Prop. & Cas. Co. v. Edmond*, 785 F.Supp.2d 561, 565 (N.D. W.Va. 2011) (Keeley, J.); *see also Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 378,

376 S.E.2d 581, 584 (1988). A policy is ambiguous when it is reasonably susceptible of more than one meaning and reasonable minds may disagree as to its meaning. *Glen Falls Ins. Co. v. Smith*, 217 W.Va. 213, 221, 617 S.E.2d 760, 768 (2005). A court is to give the language of an insurance policy such a construction as to meet the reasonable expectations of the insured. *Bailes v. Erie Ins. Prop. & Cas. Co.*, 2010 WL 358768, at *5 (S.D. W.Va. 2010) (Chambers, J.). "[W]here the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." *Jenkins v. State Farm Mut. Ins. Co.*, 219 W.Va. 190, 194, 632 S.E.2d 346, 350 (2006) (citation omitted).

An insurer's duty to defend is broader than its duty to indemnify. *Edmond*, 785 F.Supp.2d at 565. To determine whether an insurer owes its insured a defense, the court must compare the policy provisions to the allegations in the underlying complaint. *Id.* at 564. "Resolution of the duty to defend question requires examination of (1) the policy language to ascertain the terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy." *Erie Ins. Prop. & Cas. Co. v. Viewpoint, Inc.*, 2013 WL 828327, at *6–7 (N.D. W.Va. Mar. 6, 2013) (quotation and citation omitted) (Bailey, J.). This is colloquially known as the "eight corners rule." *Id.* Under the eight corners rule, an insurer has a duty to defend whenever a claim against the insured could impose liability for risks the policy covers. *Edmond*, 785 F.Supp.2d at 565. The underlying claims need only be "reasonably susceptible" to an interpretation requiring coverage for the duty to defend to arise. *Id.* If there is coverage under the policy for some claims but not others, the insurer must defend the covered and uncovered claims alike. *Id.*

9

## THE SUBJECT POLICIES

### I. The 1988–89 CGL Policy No. CWP3457716-01

Discovery in this matter revealed a CGL "renewal" policy with a policy period from January 1, 1988, to April 15, 1989 (hereinafter the "1988–89 CGL Policy") issued by plaintiff Westfield to defendant STW and designated Policy No. CWP3457716-01. [Doc. 299-1 at Exhibit 8]. This policy contains a $2,000,000 "General Aggregate Limit (Other than Products/Completed Operations)" and a $1,000,000 "Products/Completed Operations Aggregate Limit." [Id.].

The "General Liability Coverage Renewal Declarations" (hereinafter "Declarations") identifies seven "Forms and Endorsements Applicable To This Coverage Part." [Id.]. Each of the "forms and endorsements" identified in the "Declarations" to the CGL coverage is included with the 1988--89 CGL Policy. [Doc. 299-1 at Exhibit 7]. Notably, the forms include a "Commercial General Liability Coverage Form" marked "Form CG00011185" (hereinafter the "Coverage Form"). [Id.]. The Coverage Form includes the Policy's "Insuring Agreement" and "Exclusions" for the bodily injury and property damage liability coverage. [Id.].

The "Insuring Agreement" to the 1988–89 CGL Policy provides that plaintiff Westfield "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' which occurs during the policy period." [Id.]. Further, the agreement provides that the "bodily injury" and "property damage" must be caused by an "occurrence" taking place within the "coverage territory." [Id.]. Based on a review of the policy exclusions, there does not appear to be an exclusion for "products and completed operations" found in later policies issued to defendant STW. [Id.].

10

## II.  The 1988–89 Umbrella Policy No. UXC5307375

Documentation submitted by the parties also indicates that defendant STW renewed an umbrella policy [Doc. 299-1 at Exhibit 10] for the period of 1988–89 (hereinafter the "1988–89 Umbrella Policy"). [Id.]. The Declarations to the 1988-89 Umbrella Policy provide $2,000,000 "General Aggregate" liability limits, $1,000,000 "Products/Completed Operations Aggregate" limits, and $1,000,000 "Each Occurrence" limits. [Doc. 299-1 at Exhibit 11]. The "Insuring Agreement" to the 1988–89 Umbrella Policy provides that plaintiff Westfield will indemnify defendant STW for "ultimate net loss" in excess of the applicable underlying limit which the insured shall become legally obligated to pay as damages because of, *inter alia*, personal injury.  [Doc. 299-1 at Exhibit 10].

## DISCUSSION

## I.  Coverage Considerations

Central to the coverage dispute between plaintiff Westfield and defendant STW are the parties' competing theories with respect to "trigger of coverage." As potential coverage in this matter hinges on this Court's application of trigger of coverage, this Court prefaces with a review of this Circuit's differing theories applying trigger of coverage.

### A.  Trigger of Coverage

As noted by defendant STW, trigger of coverage is a term of art used to describe that which must occur during the policy period in order for the potential of coverage to arise under the policy.  *See **Montrose Chemical Corp. v. Admiral Ins. Co.***, 10 Cal. 4th 645, 913 P.2d 878 (1995).  Courts within the Fourth Circuit have devised four trigger of coverage theories

11

to determine whether latent bodily injury or property damage has occurred within the policy period under the insuring clause of standard CGL and umbrella liability policies. Namely, the four theories are (1) exposure trigger, (2) injury-in-fact trigger, (3) manifestation trigger, and (4) continuous or multiple trigger. *Imperial Cas. & Indem. Co. v. Radiator Specialty Co.*, 862 F.Supp. 1437, 1441 (E.D. N.C. 1994) (Dupree, J.).

Under the exposure trigger, the bodily injury is deemed to have occurred during the policy period whenever the claimant has been shown to have been exposed to a harmful substance during the policy period. *Ins. Co. of N. Am. v. Forty-Eight Insulations*, 633 F.2d 1212, 1225 (6th Cir. 1980). Under this theory, coverage is triggered under an "occurrence-based" policy whenever an exposure to harmful chemicals occurs during the policy period, regardless of whether the physical symptoms manifest outside the policy period. *Porter v. Am. Optical Corp.*, 641 F.2d 1128, 1145 (5th Cir. 1981).

Under the injury-in-fact trigger, the claimant must suffer an actual injury during the policy period for the claim to be covered. *Am. Home Prods. Corp. v. Liberty Mut. Ins. Co.*, 748 F.2d 760, 765 (2nd Cir. 1984). The injury need not be diagnosed or even diagnosable during the policy period in order for there to be coverage under the injury-in-fact trigger. *Id.*

The manifestation trigger requires the claimant's injury to be diagnosed or discovered during the policy period in order to find coverage. *Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co.,* 682 F.2d 12, 34 (1st Cir. 1982). Under this theory, the fact the claimant may have been exposed to harmful substances during the policy period is immaterial. Likewise, the fact that claimant's associated disease process may have begun or progressed during the policy

period is immaterial. Under the manifestation trigger, the date of claimant's diagnosis is all that matters. *Id.*

Under the continuous or multiple trigger theory, each "occurrence-based" CGL and umbrella liability policy insuring the risk from the of initial exposure through the date of manifestation is triggered. ***Keene Corp. v. Ins. Co. of N. Am.***, 667 F.2d 1034, 1041 (D.C. Cir. 1981). Under the continuous trigger, "bodily injury" within the meaning of the policies is viewed to include "any part of the single injurious process" from initial exposure, through "exposure in residence" to manifestation. *Id.* at 1047.

Plaintiff Westfield argues that this Court should adopt and apply the manifestation trigger thereby relieving it of its responsibilities under the policies issued to defendant STW; however, this Court is not persuaded. In the absence of "relevant West Virginia state substantive law addressing the issue at hand, this Court must predict how West Virginia state courts would act if confronted with the same issue." ***Jackson v. Allstate Ins. Co.***, 132 F.Supp.2d 432, 434 (N.D. W.Va. 2000) (Broadwater, J). Further, "[i]n predicting how West Virginia state courts would act, the Court must not expand upon the laws of West Virginia." *Id.* (citations omitted).

> The ***Erie*** doctrine requires us, in diversity cases, to apply
> substantive state law as it has been applied by the state's
> highest court. ***Commissioner of Internal Revenue v. Estate***
> ***of Bosch***, 387 U.S. 456, 465, 18 L. Ed. 2d 886, 87 S. Ct. 1776
> (1967). If there is no decision by that court which is directly on
> point, as here, then we must give "proper regard" to relevant

13

rulings of other courts of the state in order to predict how the high

court would rule.  *Id.*

*Burris Chem v. USX Corp.*, 10 F.3d 243, 248 (4th Cir. 1993).  As identified by both plaintiff

Westfield and defendant STW, there does not appear to be any substantive state-level case

law directly discussing trigger of coverage application in the context of latent bodily injuries

arising from exposures to hazardous substances like those alleged in the pending state-court

cases underlying this matter.  As such, this Court must predict how the Supreme Court of

Appeals of West Virginia would evaluate this issue.

The Court is heavily persuaded by the analysis and application of the continuous or

multiple trigger theory applied in two West Virginia circuit court opinions[2] cited by defendant

STW [Doc. 299-1 at 17].  In both circuit court cases, the respective judges applied the

continuous or multiple trigger of coverage in instances involving alleged damages of a

progressive or deteriorating nature.  More specifically, in *U.S. Silica Co.,* and in consideration

of coverage for claims related to silica exposure, Judge Frye found

> that a continuous trigger theory is applicable to the instant case
> and will apply a continuous trigger of coverage to the pending
> silica claims as the suits allege continuing or progressively
> deteriorating bodily injury. . . . The effect being that insurers are

---

[2]The first opinion, entered by Judge James P. Mazzone in the Circuit Court of Ohio County, is styled *Wheeling Pittsburgh Corp. v. Am. Ins. Co.*, Civil Action No. 93-C-340. The second opinion, entered by Judge Andrew N. Frye, Jr. in the Circuit Court of Morgan County, is styled *U.S. Silica Co. v. Ace Fire Underwriters Ins. Co.*, 2012 W.V. Cir. LEXIS 4449 (Nov. 27, 2017).

14

obligated to indemnify insured for costs associated with liability

beginning when the first exposure occurred (the beginning of the

accident) and until the claim is brought, or until the underlying

claimant dies[,] whichever occurs first.

*U.S. Silica Co.* at *30--31. In consideration of *Erie* and the aforementioned case law, this

Court adopts the continuous or multiple trigger of coverage theory and will apply the same in

its consideration in this matter.

### B. The 1988–89 CGL Policy Application

**1. The 1988–89 CGL policy language providing that coverage only applies to bodily injury and property damage which occurs during the policy period is ambiguous in latent disease cases and must be interpreted in defendant STW's favor.**

Having adopting the aforementioned trigger of coverage theory, this Court now

addresses the dispute between plaintiff Westfield and defendant STW concerning the terms

and conditions of the CGL policy language providing that coverage only applies to bodily injury

and property damage which "occurs during the policy period[]". In consideration of the

arguments asserted by the parties and the relevant policy language, this Court finds that the

requirement under the 1988–89 CGL Policy that "[t]his insurance applies only to 'bodily injury'

and 'property damage' which occurs during the policy period" is ambiguous in its application

to the latent bodily injuries alleged in the pending state-court claims. *See Keene Corp. v.*

*Insurance Co. of North America*, 667 F.2d 1034, 1043 (1981) (D.C. Cir. 1985) ("In the

context of asbestos-related disease, the terms 'bodily injury,' 'sickness' and 'disease,'

standing alone, simply lack the precision necessary to identify a point in the development of

15

a disease at which coverage is triggered."); *Insurance Co. of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1222 (6th Cir. 1980) ("[T]here is usually little dispute as to when an injury occurs when dealing with a common disease or accident . . . [but] there is considerable dispute as to when an injury from [a latent disease] should be deemed to occur."). In so finding, this Court notes that ambiguous policy provisions are to be "construed liberally in favor of the insured." *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986). As such, the court hereby finds and declares, as a matter of law, that coverage is triggered under the 1988–89 CGL Policy and that plaintiff Westfield owes defendant STW a continuing duty to defend in each of the underlying state court actions under said policy.

### 2. No exclusions under the 1988–89 CGL Policy apply to exclude coverage.

Having found that the claims raised in the underlying state court actions fall within the scope of coverage, the burden then shifts to the insurer to demonstrate the application of any possible exclusion. *Bowyer v. Hi-Lad, Inc.*, 216 W.Va. 634, 609 S.E.2d 855 (2004); *Potesta v. United States Fid. & Guar. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998). Here, both the 1988–89 CGL Policy and the 1988–89 Umbrella Policy contain substantially similar limited pollution exclusions which by their terms do not apply to the claims against defendant STW in the underlying actions. As identified by defendant STW, in a filing to the West Virginia Insurance Commissioner dated March 1, 1968, plaintiff Westfield represented that the revised pollution exclusions do not apply to damages arising out of the insured's products or completed operations, nor to other off-premises discharges of pollutants not specifically

excluded. *See* [Doc. 299-1 at Exhibit 18].  As such, this Court finds that plaintiff Westfield

owes defendant STW a continuing duty to defend in each of the underlying actions under the

terms of the 1988–89 CGL Policy.

## C.  The 1985–88 CGL Policy Application

In addition to the aforementioned 1988–89 CGL Policy, the parties, through ongoing

discovery, have identified documentation concerning a CGL policy issued to defendant STW

beginning January 1, 1985, with a 3-year term through January 1, 1988. *See* [Doc. 299-1 at

Exhibit 9].  The Certificate of Insurance related to the same identifies coverage against liability

arising from "products/completed operations" and contains $1,000,000 "each occurrence" and

"aggregate" policy limits. [Id.].  Additionally, the 1985 Umbrella Policy provides an additional

$2,000,000 of insurance limits. [Id.].  However, as noted by both plaintiff Westfield and

defendant STW, the parties have been unable to locate the entirety of the 1985–88 CGL

Policy.

### 1. Under West Virginia law, it is presumed that the terms and conditions of an earlier policy are analogous to the terms and conditions of a subsequent renewal policy.

As identified by defendant STW, the law in West Virginia presumes that the 1985–88

CGL Policy contains the same terms and conditions as the aforementioned 1988–89 CGL

Policy, which was categorized as a "renewal" policy. *See Sheppards v. Farmers' Mut. Fire*

*Ass'n,* 106 W.Va. 177, 145 S.E. 181, 182 (1928).  While plaintiff Westfield disputes this

interpretation of West Virginia law, it has offered no evidence in discovery demonstrating any

material differences between the 1985–88 CGL Policy and the renewal 1988–89 CGL Policy.

As such, this Court finds as a matter of law that defendant STW is entitled to a defense by plaintiff Westfield under the 1985–88 CGL Policy.

### D. The 1989–2010 CGL Policy Application

Plaintiff Westfield asks this Court to determine that it owes no duty to defend or indemnify defendant STW in any of the underlying state court actions under the 1989–2010 CGL policy identified by the parties. Conversely, defendant STW argues that a duty to defend and indemnify arises from the 1989–2010 policy language. However, defendant STW also proffers an alternative argument that, in the event this Court were to find coverage under the previously discussed 1988–89 CGL Policy and 1985–88 CGL Policy, consideration of coverage under the 1989–2010 would be unnecessary under the mootness doctrine. This Court agrees with the latter argument offered by defendant STW.

Having already found that coverage and a duty to defend exists under 1988–89 CGL Policy and 1985–88 CGL Policy based on the foregoing analysis concerning trigger of coverage, occurrence, and the applicable policy provisions contained in those two respective policies, this Court need not address whether coverage would be triggered under the 1989–2010 CGL Policy.

A case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome, and moot questions require no answer as federal courts are without jurisdiction to issue advisory opinions. *Giovanni Carandola, Ltd. v. City of Greensboro*, 258 F.App'x. 512, 515 (4th Cir. 2007). Having previously found the existence of coverage under the aforementioned policies, a determination of coverage under the 1989–2010 CGL Policy is not ripe, and the Court declines to issue such determination.

## II. The Third-Party Complaint

Having addressed the underlying coverage dispute in this matter, this Court now turns its focus to the Motions for Summary Judgment related to the third-party complaint filed by defendant STW against defendant Padden. In consideration thereof, this Court adopts and reincorporates the aforementioned standard of review relating to summary judgment.

### A. The Allegations Against Padden

On July 18, 2018, defendant STW filed a third-party complaint against Padden, who acted as an insurance agent in procuring coverage through plaintiff Westfield. [Doc. 11]. Specifically, defendant STW alleges defendant Padden failed to secure necessary insurance for it under the policies issued by plaintiff Westfield. [Id.]. Moreover, defendant STW asserts that it had a special relationship with defendant Padden, whereby defendant Padden had a duty to advise and counsel defendant STW on its coverage options. [Doc. 123]. In total, defendant STW alleges six counts against defendant Padden, including declaratory action, indemnification, breach of contract, negligence, fraudulent or intentional misrepresentation, and punitive damages. [Doc. 11].

Intrinsic to each claim is the allegation that defendant Padden failed to act within the standard of care as an insurance agent. As such, each claim is rooted in negligence. A negligence claim is based in tort law and is brought to recover damages from a party whose acts or omissions constitute the proximate cause of the claimant's injury. *Sewell v. Gregory*, 179 W.Va. 585, 587, 371 S.E.2d 82, 84 (1988). In order to establish a prima facie case of negligence, the plaintiff must show "that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff." *Strahin*

*v. Cleavener,* 216 W.Va. 175, 603 S.E.2d 197, 205 (2004). Moreover, in order to establish a prima facie case for fraudulent misrepresentation a plaintiff must prove: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Hervey v. Crouch*, 97 W.Va. 161, 124 S.E. 497 (1924). As identified above, damages are an essential element of these claims.

### 1. Having previously ruled in favor of defendant STW in the underlying coverage dispute, defendant STW cannot prevail in its claims against defendant Padden.

While disputed between the parties, this Court agrees with defendant Padden's assertion that it cannot be held liable for failing to procure coverage on behalf of defendant STW when this Court has found, as a matter of law, that coverage exists under the aforementioned analysis. Still, defendant STW asserts that even if coverage exists, it suffered a reduction in coverage due to Padden's actions. [Doc. 123]. However, defendant STW does not appear to present any reasonably ascertainable injury in lieu of the aforementioned existence of coverage. Instead, defendant STW asserts speculative, future, contingent damages in the form of a possible gap in coverage. [Doc. 311].

Damages must be present and calculable at the present time, and any claim of future damages requests this Court to issue an advisory opinion that is contingent on future events. *State Farm Mutual Auto. Ins. Co. v. Schatken*, 230 W.Va. 201, 737 S.E.2d 229 (2012) (finding that a claim is not ripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative, merely dependent on contingent events). This Court declines to

issue an advisory opinion on speculative future damages resulting in an alleged gap in coverage and, as such, defendant Padden is entitled to judgement as a matter of law as defendant STW has failed to articulate cognizable damages suffered as a result of defendant Padden's conduct.

## CONCLUSION

For the reasons stated above, plaintiff Westfield's Motion for Summary Judgment **[Doc. 302]** is **DENIED**, defendant STW's Motion for Summary Judgment **[Doc. 298]** is **GRANTED**, and defendant Padden's Motion for Summary Judgment **[Doc. 300]** is **GRANTED**. Accordingly, this Court **ORDERS** the Clerk to enter separate judgments in favor of defendant STW and defendant Padden. Finally, this matter is hereby **ORDERED STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** September 4, 2020.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

21